GEORGE ATZ, *Petitioner*, v. C. O. ANDREWS, AS JUDGE OF THE SEVENTEENTH JUDICIAL CIRCUIT OF THE STATE OF FLORIDA, RESPONDENT.

Opinion Filed June 30, 1922.

1. Where during a trial in a criminal prosecution in the County Judge's Court for alleged unlawful possession of intoxicating liquors, counsel for the State makes statements in the presence of the jury that "the article produced was intoxicating," and "that he was not only satisfied, but that he knows it is intoxicating," and an objection of the defendant to such statements not made under oath as a witness in the case is overruled by the trial court in the presence of the jury, and the testimony in the case as to the intoxicating nature of the liquors is indefinite and inconclusive, such ruling of the trial court on the objections to the statements made by the attorney for the prosecution, is a departure from the essential requirements of the law, and in view of the testimony

and the charges thereon, such statements and the rulings thereon reasonably must have been materially harmful to the defendant; therefore, a judgment of conviction for the offense alleged that is affirmed on appeal by the Circuit Court will be quashed on certiorari from the Supreme Court.

Judgment quashed.

Ellis, J., and West, J., withhold concurrence or non-concurrence upon the ground that no "opinion of the court" was delivered in this case. (Section 2977 Revised General Statutes of Florida).

The above headnote covers the portion of the opinion that was concurred in by a majority of the court. See State ex rel. Denman v. Brown, 83 Fla. 339, 91 South. Rep. 370; Lowman v. State, 80 Fla. 18, 85 South. Rep. 166, for precedents. See also concurring opinion of Mr. Justice Ellis, concurred in by Mr. Justice West, in the case of American Railway Express Company v. Weatherford, 84 Fla., 93 South. Rep. 740.

Browne, C. J., Taylor, J., Whitfield, J.

Certiorari to the Circuit Court for Lake County, C. O. Andrews, Judge.

Koonce & Hall, for Petitioner;

Rivers Buford, Attorney Genearl, and J. B. Gaines, Assistant, for Respondent.

Browne, C. J.

George Atz was convicted in the County Judge's Court of Lake County for unlawfully having alcoholic and intoxicating liquor in his possession.

On appeal to the Circuit Court of the Seventeenth Judicial Circuit the judgment was affirmed.

The case is before us for review on *certiorari*. Several questions are presented that involve constitutional guarantees.

It appears that on the night of the 4th of July, 1921, a deputy sheriff and a policeman entered a restaurant where the defendant boarded. The policeman entered through the front door which was open, and the deputy sheriff obtained admission by knocking on the back door and being admitted by the defendant. Neither had a search warrant. They made no search of the premises, but, upon gaining admission, the deputy sheriff said to the defendant: ''I understand you have got some shine around here and keeping some here for sale.'' The defendant then said: ''You know what you are talking about. I have got it, and I will give it to you.'' He then went to a little closet or pantry in the kitchen and got a couple of boxes containing bottles filled with some liquid, and gave it to the deputy sheriff, who then arrested him and took him to jail.

Both of the officers testified that they went in the restaurant, because they had seen Atz there a few minutes before. Nine bottles of the liquid that was delivered to the officers by Atz on the night of July 4th, were introduced in evidence on the trial.

After the State's evidence was concluded, the defendant announced he would introduce none, and the arguments for both sides concluded, a motion was made by the attorneys for the State to reopen the case, and permit the State to introduce such testimony as it wishes ''as to intoxicating liquor.''

The bill of exceptions recites: ''But the said Judge did overrule the defendants objection and over the objection

of the defendant did reopen the case and submit the said nine bottles to the jury to be tasted by them; whereupon some of the jurors tasted the same and others did not.''

One of the counsel for the State in his argument to the court in behalf of his motion for a continuance and for leave to produce testimony that the bottles contained intoxicating liquor, stated in the presence of the jury that "he was satisfied that the article produced was intoxicating," and he further stated in the presence of the jury "that he was not only satisfied, but that he knows that it is intoxicating.''

Objection to this language was made by the defendant, but the court overruled the objection, and did not instruct the jury not to consider the statements of the attorney for the State, and it went to the jury as a solemn statement by an officer of the court of the very fact, and a material one, that the State Attorney said he needed to make proof of.

The judgment is attacked upon five grounds: (1) The admission in evidence of articles obtained by the officers without a search warrant; (2) The admission in evidence of an alleged confession; (3) Charges of the trial court; (4) Allowing some of the jurors to taste the contents of the bottles; (5) Improper statements by the attorney for the State in the presence of the jury of a fact material to the issue, that was not otherwise proven.

1. The first question raised challenges the right to introduce in evidence the bottles and the liquid contained in them, that were taken possession of by the deputy sheriff on the night of July 4th.

It is not necessary to determine whether or not the place where the liquor was kept was the residence of the defendant, as that would only be material on the question of his right of possession, which is not involved here.

On the question of whether it was legal to use as evidence articles found as a result of a search without a warrant, the constitutional guarantee is not confined to the residence or the home, but includes "their person, houses, papers and effects." Sec. 22 Declaration of Rights, Constitution of Florida: 4th and 5th Amendments to Constitution of United States.

However improbable the testimony of the two officers may be, it is uncontradicted, and they do not say that they went there for the purpose of searching for liquor or that they made any search, but that upon the mere asking the defendant if he had any shine to sell, he produced it and delivered it to them. Had they made a search of the premises without a warrant, the fact that the defendant opened the door to the knock of the deputy sheriff and told him to come in, would not be construed as an invitation to enter for the purpose of making a search, or authority for searching after he had so obtained entrance. It is an act of ordinary courtesy to invite a person who knocks at the door of one's home to invite him to enter, and such an act of courtesy will not be construed as a waiver of "The right of the people to be secure in their persons, houses, papers and effects against unreasonable seizures and searches. shall not be violated." Sec. 22 Declaration of Rights, Constitution of Florida; 4th Amendment to Constitution of United States.

There was in this instance, however, no search made and none attempted, nor was there any demand by the officer that the defendant deliver to him any intoxicating liquor that he had in his possession.

Had there been, the introduction of the illegally acquired evidence would have been reversible error.

We do not say that there may not be instances where

property is taken possession of by officers who have obtained entrance to a house without objection or even with the consent of the owner, or where the testimony of an officer that it was voluntarily delivered to him by the owner, possessor or any one else, is contradicted, where it would be improper to introduce the evidence so obtained. We only say that in this case, there being no contradiction by the accused or any one else of the statement of the officers as to the voluntary acts of the accused in giving him the bottles, that the evidence so obtained was not improperly admitted.

In rendering his decision affirming the judgment of the County Judge's Court on appeal, the Circuit Judge said that "even admitting that the liquor was seized without legal authority this court is not inclined to adopt as applicable to this case the view laid down in the recent case of Gouled v. U. S. 41 Sup. Ct. Rep. 261, nor the former case of Boyd v. U. S. 6 Sup. Ct. Rep. 524," and held that the illegally acquired evidence was not improperly admitted, citing 4 Wigmore on Evidence, p. 3126; Underhill on Evidence, 102-103, and 2 Wharton's Criminal Evidence, p. 1076.

These authors wrote their treatises during the period when the constitutional guarantees of life, liberty and property were being modified and construed away to such a degree that wise statesmen and constitutional lovers inaugurated a back-to-the-constitution movement, that must find support in the courts, if our liberties are to be preserved.

It is of such a tendency that Mr. Justice Bradley said: "It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices got their first footing in that way, namely, by

silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon. Their motto should be *obsta principiis.*'' Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. Rep. 524.

In Gouled v. United States, *supra,* the court said: ''It would not be possible to add to the emphasis with which the framers of our Constitution and this court (in Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. Rep. 524, 29 L. Ed. 746, in Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. Rep. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, and in Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 Sup. Ct. Rep. 182, 64 L. Ed. 319) have declared the importance to political liberty and to the welfare of our country of the due observance of the rights guaranteed under the Constitution by these two amendments. The effect of the decisions cited is: That such rights are declared to be indispensable to the 'full enjoyment of personal security, personal liberty and private property;' that they are to be regarded as of the very essence of constitutional liberty; and that the guaranty of them is as important and as imperative as are the guarantees of the other fundamental rights of the individual citizen—the right of trial by jury, to the writ of habeas corpus, and to due process of law. It has been repeatedly decided that these amendments should receive a liberal construction, so as to prevent stealthy encroachment upon or 'gradual depreciation' of the rights secured by them, by

imperceptible practice of courts or by well-intentioned, but mistakenly overzealous, executive officers.''

Mr. Wigmore, who is quoted approvingly by the Circuit Judge, seeks to justify the doctrine we have been discussing by discrediting the decision of the Supreme Court of the United States in the Boyd case *supra*. His conclusions, however, are untenable in the light of recent decisions of the Supreme Court of the United States, (Gouled v. United States, 255 U. S. 298, 41 Sup. Ct. Rep. 261; Amos v. United States, 255 U. S. 313, 41 Sup. Ct. Rep. 266, decided Feb. 28, 1921,) where the doctrine of Boyd v. United States, was reaffirmed, broadened and strengthened, and there can now be no questioning the doctrine, that property seized in a search by government agents without warrant of any kind in violation of Art. 22 of the Declaration of Rights of the Constitution of Florida, and of the 4th and 5th Amendments to the Constitution of the United States, as they have been interpreted and applied by the Supreme Court of the United States from Boyd v. United States, down to the latest reported cases of Gouled v. United States, and Amos v. United States, *supra*, shall not be used in a criminal prosecution against him.

In the Gouled case the court said: ''The prohibition of the Fourth Amendment is against all unreasonable searches and seizures and if for a government officer to obtain entrance to a man's house or office by force or by an illegal threat or show of force, amounting to coercion, and then to search for and seize his private papers would be an unreasonable and therefore a prohibited search and seizure, as it certainly would be, it is impossible to successfully contend that a like search and seizure would be a reasonable one if only admission were obtained by stealth instead of by force or coercion. The security and privacy of the

home or office and of the papers of the owner would be as much invaded and the search and seizure would be as much against his will in the one case as in the other, and it must therefore be regarded as equally in violation of his constitutional rights.''

In the case of Hughes v. State, 145 Tenn. 544, 238 S. W. Rep. 588, decided as late as Feb. 27, 1922, the court said: ''But in cases where the action of the governmental authorities is unlawful and violative of the constitutional rights of the citizen, and directly developed and disclosed the facts of the violation of the law, the government cannot rely upon the evidence thus unlawfully obtained by its agents. The case of Amos and Gouled, *supra*, are direct authority for the proposition just stated.''

The Circuit Judge quoted approvingly from Wharton's Criminal Evidence, that ''State Courts in some instances in express terms have stated their indifference to the methods used to obtain demonstrative evidence and refuse to exclude it on the ground that it was illegally obtained. A different rule prevails in the United States Courts.'' Mr. Wharton then quotes to this effect from Gindrat v. People, 138 Ill. 103, 27 N. E. Rep. 1085: ''Courts, in the administration of the criminal law, are not accustomed to be oversensitive in regard to the sources from which evidence comes.''

From these the inference may be drawn that constitutional guarantees are more carefully guarded and protected in the Federal, than in the States Courts.

If such a distinction exists, it may account for the growing tendency to broaden and extend the Federal power.

Whatever other State courts may do, the Supreme Court of Florida will guard and protect the constitutional rights,

privileges and immunities of the people, as sacredly as the Federal courts.

Why a court should encourage its officers *illegally to acquire* evidence to be used against a person on trial for having *illegally* acquired some commodity, is a problem in morals, that is a bit confusing to one not a zealot or a fanatic.

For one to acquire illegally, or illegally to possess intoxicating liquors is a crime; but it is a crime that generally affects a few persons in a restricted locality.   To permit an officer of the State to *acquire evidence illegally* and in *violation of sacred constitutional* guarantees, and to use the *illegally acquired* evidence in the prosecution of the person who illegally acquired the intoxicants, strikes at the very foundation of the administration of justice, and where such practices prevail make law enforcement a mockery.

In this era when earnest thinking men and women are ardently trying to arouse public sentiment on the subject of strict law enforcement, it would seem most meet and proper for the courts to set the example, and not sanction law-breaking and constitutional violation in order to obtain testimony against another law-breaker.   Better the mob and the Ku-Klux, than a conviction obtained in a temple of justice by testimony illegally acquired by agents of the Government and officers of the law.   The distinction between illegally acquired testimony and perjured testimony is not in kind but in degree, and a conviction obtained by the use of either or both of these methods, condemns the administration of justice at the same time that it condemns the prisoner.   The liberties of the people cannot safely be entrusted to those who believe that violation of prohibition laws is more heinous than violations of the constitution.

In view of the unlawful acts done in the name of law enforcement it may be well to recall the 55th Clause of Magna Charta, which the Barons required King John to sign for the preservation of the liberties of the people: " 'We will not make any justices, constables, sheriffs or bailiffs, but of such as know the law of the realm, and mean duly to observe it.' " And as was said by the Supreme Court of Indiana, in State v. Newson, 59 Ind. 173, (called to our attention by the Attorney General) : ''But as we cannot hope, in the present state of society, to be certain of the protection of officers possessing the qualifications above mentioned, we must still depend upon a strict adherence to and enforcement of constitutional restraints.'' And this ''strict adherence'' must be by the courts. See also United States v. Rykouski, 267 Fed. Rep. 866.

2. We will now consider the assignment of errors based upon the introduction in evidence by the State, of admissions made by Atz at the time he voluntarily produced the liquor, and delivered it to the deputy sheriff.

It appears that at this time he voluntarily stated to the officers ''it is mine, no one else has anything to do with it, no one but me.'' At this time he was not under arrest, and it was not until he had said and done these things that the deputy sheriff said: ''I will have to take charge of you Mr. Atz.''

The liquor was found in the kitchen of a restaurant operated by ''a lady by the name of Fanny Kertzie'' with whom Atz boarded, and his voluntary assertion of ownership of the liquor may have been to shield her. However that may be, his statement was a voluntary one, and was properly admitted in evidence.

3. On submitting the case to the jury the Judge of the County Judge's Court gave this instruction: ''If you find

from the evidence beyond a reasonable doubt that the defendant did have in his possession, custody or control in Lake County, Florida, or within two years from filing of warrant in this case, moonshine whiskey, the court takes judicial cognizance of the fact that moonshine whiskey means intoxicating liquor or beverages as defined by the statutes of this State, and if you find that he did have in his possession moonshine whisky, it would be your duty to find the defendant guilty.'' This charge was not warranted by the statute nor by the evidence in the case.

The defendant was being tried on a charge of having ''in his possession, custody and control in this State alcoholic and intoxicating liquor and beverages.''

Section 5460 Rev. Gen. Stats., 1920, provides: ''That it shall be unlawful for any person, association of persons, or corporation, or any agent or employee of any person, association of persons, or corporation, to have in his, her, their or its possession, custody or control, in this State, any alcoholic or intoxicating liquors or beverages, except as is hereinafter provided.''

Section 5480 Rev. Gen. Stats. contains this provision: ''And the possession by any person, association of persons or corporation, in this State, of any quantity of what is commonly called rum or moonshine liquor shall in any of the courts of this State, in any prosecution or other proceeding for the violation of any of the provisions of Sections 5458, 5460, and 5461 of this Article, be deemed prima facie evidence of the violation of any of such provisions of such sections of this article.''

In the instruction complained of the court uses the expression ''moonshine whiskey,'' while the statute relates to ''what is commonly called rum or moonshine liquor.''

There is not a word of testimony in the record about "rum" or "moonshine liquor," or about "moonshine whiskey," as used in this instruction. None of these terms appear anywhere in the record. The instruction in this respect is not warranted either by the statute or the testimony. It is also erroneous in that it says that "the court takes judicial cognizance of the fact that moonshine whiskey means intoxicating liquor or beverages as defined by the statute of this State." There is nothing in the statute to warrant this instruction, and under it the courts cannot take judicial notice that a beverage is intoxicating which the makers or users thereof may choose to call "Moonshine," "Shine," "Shiny," "White Mule," "Packingham," or anything else which fancy or safety may suggest. This instruction was erroneous and harmful error.

4.   The defendant requested the following instruction: " 'Alcoholic or intoxicating' liquors, as defined by the law in this State, means 'Any drink or beverage or alcoholic liquor for beverage purposes, containing one-half of one per centum of alcohol, or more, by volume at sixty degrees Farenheit.' Before you can convict the defendant in this case, you must be satisfied by the evidence, beyond a reasonable doubt, first that he actually possessed the liquor, and next that such liquor contained one-half of one per centum, or more, by volume at sixty degrees Farenheit, or that the said liquor was intoxicating. You must be satisfied of both these facts beyond a reasonable doubt, and be so satisfied by the evidence at this trial. Such proof is not sufficient by merely tasting or smelling, or both, but there should be evidence either by chemical analysis, or by evidence as to the intoxicating effects by use of the same. And until you have such evidence sufficient to overcome the presumption of innocence which the law throws around

the defendant, there is a reasonable doubt of his guilt and it becomes your duty to find the defendant 'Not Guilty.'"

This instruction the court gave eliminating these words: "Such proof is not sufficient by merely testing or smelling, or both, but there should be evidence either by chemical analysis, or by evidence as to the intoxicating effects by use of the same."

Without passing upon the merits of this charge as a whole, it was error for the court to refuse to include in it the stricken portion. What we have said with regard to the inadequacy of the sense of taste to determine the alcoholic or intoxicating qualities of liquor, made it error for the court to strike this portion of the instruction. See Norwood v. State, 80 Fla. 613, 86 South. Rep. 506.

5. After the State concluded its testimony, the defendant announced that he would introduce none. When the attorney for the defendant, who had the closing argument, concluded, and the case was ready to be submitted to the jury, the State moved that the case be re-opened and court adjourn until the next morning at 9 o'clock, "at which time the State would furnish testimony which it wishes to introduce as to intoxicating liquor." Objection was made by the defense, "but the said Judge did overrule the defendant's objection, and overruling the objection of the defendant did re-open the case and submit the said nine bottles to the jury to be tasted by them; whereupon some of the jurors tasted the same and others did not." Due objection was made by the defense to the jurors drinking the liquor, but his objections were overruled and exception taken.

Much laxity is permitted by the rule prevailing in this State, that in the matter of procedure in the trial of a

cause, great discretion is vested in the trial judge, and we do not find that in the mere fact of re-opening this case for the purpose of introducing testimony as to the intoxicating character of the liquor, was reversible error.

6. A different question, however, arises when we consider the character of the testimony offered by the State after it was given authority to do so by the court. This testimony consisted in permitting some of the jurors to drink of the liquor for the purpose of determining whether or not it was intoxicating.

Even where all the jurors drink of the liquor, this is a very questionable proceeding, and may be a violation of the Volstead Act.

The alcoholic or intoxicating properties of liquor are not matters about which any one, and perhaps not even an expert, is capable of testifying. Liquor containing more than one half of one per cent of alcohol, or liquor that is in fact and in truth intoxicating, can be disguised so that these properties might not be apparent, even to one more or less familiar with the use of intoxicants. On the other hand, liquors containing less than one-half of one per cent. of alcohol may so resemble liquors in taste and smell, that perhaps an expert could not detect the difference.

It is a matter of public knowledge that there are on sale practically everywhere in the United States, various brands of beer, containing less than one-half of one per cent. of alcohol, that in taste and appearance so resemble the beers of ante-prohibition days, that it is difficult for most persons to tell the difference between them; some even having their old ante-prohibition names.

Sundry beverages called by their old alcoholic names, Burgundy, Vermuth, Virginia Dare, Grand Mousseux,

Benedictine, Chartreuse—once well known brands of alcoholic wines and cordials, the alcoholic content of which is now less than one-half of one per cent. are on sale in the open market by reputable firms which few persons would be able to distinguish from the genuine article by merely tasting them.

7.  The attorney for the State at the conclusion of the arguments, perhaps realizing that he had not established the fact that the liquor contained more than one-half of one per cent. alcohol, or that it was in fact intoxicating, sought to remedy it by having some of the jurors drink of the liquor.

Conceding that those jurors who drank of it were experts and knew that it came within the class prohibited by law, still the jurors who *did not* partake of it had no such knowledge, and with respect to them no competent testimony was submitted of its alcoholic or intoxicating properties, and it follows that a verdict based upon evidence that was imparted to some of the jurors and not to others on a matter that went to the very heart of the case, cannot stand.

8.  There was an attempt made to prove by the deputy sheriff the character of the liquor.  He says that he opened two or three of the bottles and tasted them, and in reply to the question whether the liquor he tasted was intoxicating, he said: "It would make me drunk."  He further testified that he would call the liquor "shine," and when asked, "Is ordinary shine liquor intoxicating?" he replied "yes."  This testimony falls far short of what is necessary to prove the alcoholic or intoxicating character of liquor.  It was his opinion that it would make him drunk, but that was his bare opinion upon a matter that was not shown that he was qualified to give an opinion upon, or that he had drunk enough of the liquor to produce the

result he thought it would. The statement that this liquor was "shine," and that *ordinary* "shine" liquor is intoxicating, in no way proved the alcoholic or intoxicating properties of the liquor.

In the case of Norwood v. State, 80 Fla. 613, 86 South. Rep. 506, this court in an opinion by Mr. Justice Ellis, thus disposes of the inadequacy of this character of evidence. "The defendant was charged with the manufacture of 'alcoholic and intoxicating liquors.' The evidence showed that when a Mr. Stow and a Mr. Moody invaded the defendant's house and made a search they found 'four gallons of buck.' The defendant said he made it for the boys to drink when they came to prime tobacco. Mr. Moody said it was intoxicating, but his cross-examination showed that his statement of fact was a mere impression, gained from tasting the liquor. What sensations were produced through his sense of taste to convince his judgment as to the alcoholic or intoxicating properties of the liquor he did not inform the court or jury.

"The evidence was insufficient to establish either the alcoholic or intoxicating properties of the 'buck.' "

9. In the argument on the motion to re-open the case for additional testimony, the attorney for the State in the presence of the jury said: "He was satisfied that the article produced was intoxicating," and he further stated, "that he was not only satisfied, but that he knows that it is intoxicating." Objections to these statements were made by the attorney for the defense, but they were overruled, and these positive statements made in the presence of the jury by an officer of the court as to a material fact, were allowed to stand. There was no competent testimony of the alcoholic or intoxicating properties of the liquor, and these statements by the counsel for the State were improper, and

the court should have told the jury not to consider them. In view of the condition of the testimony upon this point, we cannot say that these statements solemnly made by an officer of the court were not taken into consideration by the jury, and made the basis for their verdict.

In the case of Newton v. State, 21 Fla. 53, this court laid down the rule: "It is improper for counsel to add, by his own statement, a fact without the authority of an oath or evidence to the testimony as submitted to the jury. A statement of a fact by counsel not authorized or proven by the evidence, should not be allowed to go to the jury." See also Killens v. State, 28 Fla. 313, 9 South. Rep. 711; Jenkins v. State, 35 Fla. 737, 18 South. Rep. 182; Bradham v. State, 41 Fla. 541, 26 South. Rep. 730; Danford v. State, 53 Fla. 4, 43 South. Rep. 593.

The effect of such statement even when stricken by the court is thus stated by the court in the case of Ticker v. Henniker, 41 N. H. 317: "When counsel are permitted to state facts in argument, and to comment upon them, the usage of the courts regulating trials is departed from, the laws of evidence are violated, and the full benefit of trial by jury is denied. It may be said in answer to these views that the statements of counsel are not evidence; that the court is bound to so instruct the jury, and that they are sworn to render their verdict only according to evidence. All this is true, yet the necessary effort is to bring the statements of counsel to bear upon the verdict with more or less force according to circumstances, and if they, in the slightest degree, influenced the finding, the law is violated, and the purity and impartiality of the trial tarnished and weakened. If not evidence, then manifestly the jury have nothing to do with them, and the advocate has no right to make them. It is unreasonable to believe the jury will en-

tirely disregard them. They may struggle to disregard them; they may think they have done so, and still be led involuntarily to shape their verdict under their influence.'' See also Killins v. State, *supra*.

The court erred in not instructing the jury not to consider or give any weight to the statement by counsel as to the intoxicating character of the liquor.

''While a judgment will not, on *certiorari*, be quashed for mere errors in the proceedings that are not fundamental or manifestly unjust in their nature or material consequences, yet where the trial court did not proceed according to the essential requirements of the law and material injury results therefrom, and the judgment has been affirmed by an intermediate appellate court, relief may in proper cases be had on certiorari, when that writ is allowed in the sound discretion of a superior court. See Balbontin v. State, 68 Fla. 84, 66 South. Rep. 421.'' Haile v. Bullock, decided at the January Term, 1922.

It appears from the duly authenticated bill of exceptions that became a part of the record brought here on certiorari, that the trial court did not proceed according to the requirements of the law, as indicated in this opinion, and that material injury resulted to the petitioner.

The judgment of the County Judge's Court affirmed by the Circuit Court, is quashed.

TAYLOR, J., concurs.

WHITFIELD, ELLIS and WEST, J. J., concur in conclusion reached.