277 So.2d 81 (1973)
Miriam Caridad MORENO, a/K/a Miriam Espino, Appellant,
v.
The STATE of Florida, Appellee.
No. 72-1308.
District Court of Appeal of Florida, Third District.
May 1, 1973.
*82 Max B. Kogen, Miami, for appellant.
Robert L. Shevin, Atty. Gen., and Peter F. LaPorte, Asst. Atty. Gen., for appellee.
Before CHARLES CARROLL and HENDRY, JJ., and McCAIN, DAVID L., Associate Judge.
HENDRY, Judge.
Appellant was informed against for unlawful possession of a narcotic drug and possession of implements for drug use. She was tried and found guilty of both charges and sentenced to one year imprisonment in the Dade County Stockade with an additional period of probation for three years.
The record on appeal shows that similar charges were filed on January 20, 1972, against appellant as a result of an earlier search and seizure made at her home. An arrest warrant was issued as a result of those charges. Thereafter, narcotics officers drove by appellant's home from time to time after the arrest warrant was issued but no effort was made to serve it until March 24, 1972, at which time four officers were passing appellant's home and saw an automobile, thought to be owned by appellant, parked in front of her house.
Two of the officers went to the front door and the other two went to the back door. They knocked, shouted, "Police officers," and waited about ten minutes. Then, having heard no response, the officers forced their way into appellant's home. They found appellant in bed, fast *83 asleep. Near her bed they found narcotics and narcotic implements. Appellant was awakened and placed under arrest. She was charged and convicted of unlawful possession of a narcotic drug and possession of implements for drug usage based upon the evidence found and seized in appellant's bedroom.
Appellant was arraigned and entered a plea of not guilty. Prior to trial her motion to suppress the evidence was heard and denied. Upon trial she was convicted under both counts of the information.
One of the points urged by appellant[1] for reversal is that the trial court erred in refusing to suppress the evidence seized since it was obtained as a result of an invalidly effectuated arrest. We find merit in appellant's contention and reverse.
Fla. Stat., § 901.19(1), F.S.A.,[2] provides:
"If a peace officer fails to gain admittance after he has announced his authority and purpose in order to make an arrest either by a warrant or when authorized to make an arrest for a felony without a warrant, he may use all necessary and reasonable force to enter any building or property where the person to be arrested is or is reasonably believed to be." [Emphasis supplied.]
In the instant case, the evidence clearly shows that the arrest was not made in accordance with the provisions of § 901.19(1), Fla. Stat., F.S.A., in that the officers did not announce the purpose for their being at appellant's home.
In the case of Benefield v. State, Fla. 1964, 160 So.2d 706, our Supreme Court portrayed the correct manner in which an arrest under the statute[3] should be effectuated. The court stated: (160 So.2d 709)
"When an officer is authorized to make an arrest in any building, he should first approach the entrance to the building. He should then knock on the door and announce his name and authority, sheriff, deputy sheriff, policeman or other legal authority and what his purpose is in being there. If he is admitted and has a warrant, he may proceed to serve it ... if he is refused admission and is armed with a warrant or has authority to arrest for a felony without a warrant, he may then break open a door or window to gain admission to the building and make the arrest .. . If the building happens to be one's home, these requirements should be strictly observed." [Emphasis supplied.]
The court did note, however, four instances in which the procedures outlined within the statute might be dispensed with. These exceptions are: "(1) where the person within already knows of the officer's authority and purpose; (2) where the officers are justified in the belief that the persons within are in imminent peril of bodily harm; (3) if the officer's peril would have been increased had he demanded entrance and stated the purpose, or (4) where those within made aware of the presence of someone outside are then engaged in activities which justify the officers in the belief that an escape or destruction of the evidence *84 is being attempted." Benefield v. State, supra at 710; Earman v. State, Fla. 1972, 265 So.2d 695. The record before us is devoid of any testimony by the police officers or other competent evidence showing any circumstances that would bring the case sub judice within any of the four exceptions to the strict dictates of the statute. Absent such evidence, the fruits of any search conducted pursuant to such arrest must be considered illegally obtained and should have been suppressed. Earman v. State, supra.
Accordingly, we hold that the trial court erred in failing to suppress the evidence seized as a result of an invalidly effectuated arrest. Therefore, the judgment and sentence are hereby reversed.
Reversed.
NOTES
[1] Due to the disposition made of this case based on this point, we need not consider appellant's remaining points.
[2] Prior to the amendment of this statute in 1970, the provision provided:

"An officer, in order to make an arrest either by virtue of a warrant, or when authorized to make such arrest for a felony without a warrant, may break open a door or window of any building in which the person to be arrested is or is reasonably believed to be, if he is refused admittance after he has announced his authority and purpose." [Emphasis supplied.]
[3] The court was dealing with the statute as it appeared prior to its amendment and quoted in note 2, supra.