# Supreme Court of Florida

---

No. SC2024-0647

---

**STATE OF FLORIDA,**
Petitioner,

vs.

**KEITH ALEXANDER TIMES,**
Respondent.

June 25, 2026

SASSO, J.

The State of Florida appeals an order suppressing evidence

obtained during a search conducted pursuant to a warrant that was

executed on the home of Respondent, Keith Alexander Times.  It is

undisputed that law enforcement violated section 933.09, Florida

Statutes (2020), a knock-and-announce statute,[1] during the

execution of the warrant.  Based on that violation, the trial court

granted Times' motion to suppress the evidence.  Bound by *State v.*

---

1.  Section 933.09 is one of two "knock-and-announce"
statutes in Florida.  Section 933.09 pertains to search warrants
while section 901.19, Florida Statutes (2025), pertains to arrests.

*Cable*, 51 So. 3d 434 (Fla. 2010), where this Court held that exclusion is the applicable remedy for knock-and-announce violations, the First District Court of Appeal affirmed the trial court's order. *State v. Times*, 383 So. 3d 555, 557 (Fla. 1st DCA 2024). But the First District certified the following question as one of great public importance:

> WHETHER EVIDENCE OBTAINED UNDER A VALID SEARCH WARRANT MUST BE SUPPRESSED TO REMEDY A VIOLATION OF THE KNOCK-AND-ANNOUNCE REQUIREMENT OF SECTION 933.09, FLORIDA STATUTES?

*Id.* at 560. For the reasons below, we answer that question in the negative.[2] In doing so, we quash the decision below and recede from our decision in *Cable* to the extent that it is inconsistent with this opinion.

**I**

While investigating a suspected drug trafficking organization (DTO) in Leon County, the Florida Department of Law Enforcement (FDLE) determined that one member of the DTO, Ja'Mario Paramore, was using a residence to store narcotics and the

---

2. We have jurisdiction. *See* art. V, § 3(b)(4), Fla. Const.

- 2 -

proceeds from their distribution.  Based on that information, FDLE lawfully obtained a search warrant for the residence.  FDLE and the Tallahassee Police Department executed the search warrant after forcibly entering the home with a battering ram.  *Times*, 383 So. 3d at 557.  Before entry, law enforcement knocked multiple times and announced their presence twice, demanding that someone come to the door.  *Id.*  However, it was not until seconds before entry that an officer stated that the police were in possession of a search warrant. *Id.*  Paramore, Times, and two others were located inside the residence.  Law enforcement located cocaine, the drug "Molly," over $23,000 in cash, and two firearms.  Times was ultimately charged with trafficking in amphetamines, possession of cocaine, and possession of a firearm by a convicted felon.  *Id.*

Times moved to suppress the evidence obtained in the search, arguing that the officers violated section 933.09.  *Id.*  After a hearing, the trial court concluded that the officers did not comply with section 933.09 because a resident is not required to open the door until the officer announces he has a search warrant, and here, the occupants were not given sufficient time after the officer announced the warrant to answer the door.  *Id.* at 558.  Based on

this Court's precedent in *Cable* prescribing exclusion as a remedy for a violation of the knock-and-announce statute, the trial court suppressed the evidence. The State appealed, but the First District affirmed. *Id.* at 560. In doing so, the First District agreed on the binding nature of *Cable* but noted that its holding requiring suppression for a knock-and-announce violation "appears [to] be the minority position among the various states that have considered the issue in the eighteen years since the United States Supreme Court decision in *Hudson* [*v. Michigan,* 547 U.S. 586 (2006)]." *Times,* 383 So. 3d at 560. Judge Nordby specially concurred, agreeing that the evidence must be suppressed but recognizing the State's "compelling arguments highlighting why [this Court's] precedent should be revisited." *Id.* at 561 (Nordby, J., specially concurring). The State then sought discretionary review of the First District's decision based on the certified question of great public importance. This Court accepted jurisdiction.

## II

### A

There are two knock-and-announce statutes in Florida. *See* §§ 901.19, 933.09, Fla. Stat.; *see also Times,* 383 So. 3d at 557 n.1.

These are not new laws—section 933.09, which is the applicable statute here, was first codified in 1923. *See* ch. 9321, § 9, Laws of Fla. (1923). The knock-and-announce statutes represented a codification of the English common law, which "recognized the fundamental sanctity of one's home yet nevertheless provide[d] that an arresting officer 'may break open doors, if the party refused upon demand to open them.'" *Benefield v. State,* 160 So. 2d 706, 710 (Fla. 1964) (quoting 1 Sir Matthew Hale, *The History of the Pleas of The Crown* 583 (Sollom Emlyn ed., 1736)).

Importantly though, the exclusionary rule was not a feature of common law. *See Cable,* 51 So. 3d at 444 (Polston, J., dissenting) (citing 8 John Henry Whitmore, *A Treatise on the Ang[l]o–American System of Evidence in Trials at Common Law* § 2183 (3d ed. 1940) ("[I]t has long been established that the admissibility of evidence is not affected by the illegality of the means through which the party has been enabled to obtain the evidence." (citing to English precedent dating to 1723) (emphasis omitted))). Even so, in 1964, this Court announced an exclusionary rule for knock-and-announce violations. *See Benefield,* 160 So. 2d at 711; *Cable,* 51 So. 3d at 438-39. And in 1982, Florida voters amended article I,

section 12 of the Florida Constitution to require conformity to the United States Supreme Court's interpretation of Fourth Amendment issues. *See* art. I, § 12, Fla. Const. This development inserted the issue of whether the Federal Constitution demanded the knock-and-announce rule into Florida's Constitution.[3]

*Wilson v. Arkansas*, 514 U.S. 927, 931-36 (1995), marked the first time the United States Supreme Court expressly stated the knock-and-announce requirement was a feature of the Fourth Amendment's reasonableness inquiry and therefore a matter of federal constitutional law. But in *Hudson v. Michigan*, 547 U.S. 586 (2006), the United States Supreme Court clarified that violations of the knock-and-announce rule did not require the suppression of all evidence found in the search. *Id.* at 594.

Following *Hudson*, two Florida district courts of appeal split on the issue of whether exclusion nevertheless remained the applicable

---

3. *See* Erin Elizabeth Cassinelli, *Constitutional Law—Fourth Amendment—Knock and Announce: The Ninth Circuit Knocks and the Supreme Court Announces a Re-Emphasis on the Case-by-Case Analysis. United States v. Banks, 540 U.S. 31 (2003)*, 27 U. Ark. Little Rock L. Rev. 295, 306 (2005) (discussing conflict among state and federal courts about the link between the knock-and-announce rule and the Constitution).

remedy for statutory knock-and-announce violations. *Compare Cable v. State*, 18 So. 3d 37, 39 (Fla. 2d DCA 2009) (concluding that *Hudson* did not "displace the existing Florida precedent, which mandates the application of the exclusionary rule"), *with State v. Brown*, 36 So. 3d 770, 775 (Fla. 3d DCA 2010) ("[R]eversal is [independently] required . . . because of the holding of *Hudson* that even established violations of the [knock-and-announce] principle do not implicate the exclusionary rule so as to suppress pertinent evidence."). We resolved the conflict between the districts in *Cable* by siding with the Second District. 51 So. 3d at 441. We concluded that the exclusionary rule was the applicable remedy "[a]s a matter of state law." *Id.* at 442. To reach that conclusion, we characterized our decision in *Benefield* as holding that "a violation of Florida's knock-and-announce statute vitiated the ensuing arrest and required the suppression of the evidence obtained in connection with the arrest." *Id.* at 435. We concluded that "because the remedy of exclusion in *Benefield* was based on a violation of Florida's knock-and-announce statute, and not the Fourth Amendment," *Hudson* did not require us to recede from *Benefield.* *Id.*

- 7 -

In addition to distinguishing *Hudson*, we set forth other factors that weighed against receding from *Benefield*. Specifically, we rejected the State's argument that the 1982 constitutional amendment to article I, section 12 of the Florida Constitution, requiring that section to be interpreted in conformity with the Fourth Amendment to the United States Constitution, necessitated receding. *Id.* at 442-43. We concluded that, like *Hudson*, that amendment was inapplicable to a statutory analysis. *Id.* We also rejected the State's argument that *Jenkins v. State*, 978 So. 2d 116 (Fla. 2008), governed because, unlike the statute in *Jenkins*, the knock-and-announce statute at issue in *Cable* lacked an "explicit" remedy. *Cable*, 51 So. 3d. at 443.

**B**

Against this backdrop, we analyze the State's argument that this Court clearly erred in *Cable* when it determined that the remedy of exclusion of evidence should be applied for a violation of section 933.09. We review this issue de novo. *See Statler v. State*, 349 So. 3d 873, 878-79 (Fla. 2022) (explaining that holdings implicating both statutory interpretation and constitutional issues are reviewed de novo).

- 8 -

The issue in *Cable* was one of remedy. We therefore begin by examining the statutory text because the remedy for violations of a Florida statute "fall[s] within the purview of the Legislature." *Jenkins*, 978 So. 2d at 130. Section 933.09 provides that a law enforcement officer may forcibly enter a house while executing a warrant "if after due notice of the officer's authority and purpose he or she is refused admittance to said house or access to anything therein." § 933.09, Fla. Stat. In other words, a law enforcement officer may not forcibly enter a home to execute a warrant until he or she has knocked, announced his or her authority and purpose, and been refused admittance. *See id.*

The plain text of section 933.09 does not authorize, let alone require, the suppression of evidence. *See Cable*, 51 So. 3d at 444 (Polston, J., dissenting) ("Florida's knock-and-announce statute at issue [in section 901.19] does not contain an exclusionary rule."); *State v. Pruitt*, 967 So. 2d 1021, 1032 (Fla. 2d DCA 2007) (Villanti, J., specially concurring) (concluding that the exclusionary rule should not apply because "nothing in the language of section 933.09 requires suppression of the evidence if the rule is violated"). But chapter 933, Florida Statutes, is not without a statutory

remedy. *See Times*, 383 So. 3d at 561 (Nordby, J., specially concurring). Indeed, chapter 933 deters violations of section 933.09 by threatening wayward police officers with criminal penalties. Chapter 933's enforcement provision—entitled "[e]xceeding authority in executing search warrant; penalty"—states that "[a]ny officer who in executing a search warrant willfully exceeds his or her authority or exercises it with unnecessary severity, shall be guilty of a misdemeanor of the second degree." § 933.17, Fla. Stat. (2025).[4]

Because section 933.09 does not itself contain an exclusionary rule and section 933.17 prescribes remedies for violations of section 933.09, we do not infer that the remedy of exclusion is available for violations of section 933.09.[5] *See Jenkins*, 978 So. 2d at 130. We

---

4. This statutory enforcement mechanism dates to the original chapter law codifying the knock-and-announce rule for search warrants. *See* ch. 9321, §§ 9, 17, Laws of Fla. (1923). Like the current version of the statute, the 1923 enactment made the "[p]enalty for exceeding" an officer's "authority" under the Act a "fine[]" of up to $500, "imprison[ment] for not more than six months," and potential "suspension from and removal from office." *Id.* § 17.

5. Times argues that section 933.17 does not cover violations of section 933.09 because the former requires one to "willfully" exceed their authority while the latter has no mens rea

typically do not insert remedies that the Legislature has omitted. *See, e.g., QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n*, 94 So. 3d 541, 553 (Fla. 2012); *see also Jenkins*, 978 So. 2d at 130 (noting that statute at issue did not expressly list the exclusionary rule as a remedy and, therefore, we do not infer that this remedy is available for violations of the statute). By contrast, the Legislature has demonstrated that, when it intends to include a remedy of exclusion, it knows how to do so. *See, e.g.*, § 934.06, Fla. Stat. (2025) (prescribing exclusion as penalty for violation of wiretapping statute); § 318.14(4)(b), Fla. Stat. (2025) (establishing that certain compelled statements during traffic investigations "shall not be used as evidence in any other proceedings"); *see also Brooks v. State*, 363 So. 3d 181, 184-85 (Fla. 5th DCA 2023) (holding that section 901.16, Florida Statutes (2018), did not require suppression of statements where the statute did not include that remedy).

Times argues that absence of explicit legislative authorization

---

requirement. Times reasons that law enforcement would be free to not train themselves on section 933.09 and then be free from penalization. But this perceived insufficiency is a policy matter and does not make the remedy more or less applicable.

of an exclusionary rule should not deter us. This is so, Times submits, because while not explicitly stated in the statute, the exclusionary rule is part of the background against which the Legislature passed the knock-and-announce statute in 1923. Times therefore urges this Court to conclude that the Legislature would have understood a remedy of exclusion to be coextensive with a codification of the common law knock-and-announce rule, such that the remedy would be necessarily implied by the text. But a close examination of this argument reveals its weakness.

First, Times' attempt to demonstrate a historical context that included the exclusionary rule falls short. For pre-codification support, Times relies exclusively on *Atz v. Andrews*, 94 So. 329 (Fla. 1922), in which two justices of this Court joined in an opinion discussing the exclusionary rule in the context of an alcohol possession offense. *Id.* at 332. But Chief Justice Browne's opinion in *Atz* was not an "opinion of this Court," and his reasoning was therefore not binding precedent. *See id.* at 330 (opinion of Ellis & West, JJ.). So limited, we reject Times' characterization of this opinion as the "default" position of the Court. But even if the opinion were indicative of a developing legal principle, Chief Justice

Browne's reasoning in *Atz* was based on what this Court viewed as a constitutional violation[6] rather than a statutory violation. *Id.* Thus, any time *Atz* references "illegally" acquired evidence, it is in a markedly different context. *Id.* at 332. *Atz* therefore does not dissuade us from our understanding that, by codifying common law, suppression was not an applicable remedy for a violation of section 933.09.

Second, Times' post-codification arguments fail as well. Times argues that if this Court "had interpreted the intent of the legislature incorrectly . . . there would undoubtedly be a lot more legislative activity on the issue." But "[w]e walk on quicksand when we try to find in the absence of corrective legislation a controlling legal principle." *Tsuji v. Fleet*, 366 So. 3d 1020, 1030 (Fla. 2023) (quoting *Helvering v. Hallock*, 309 U.S. 106, 121 (1940) (Frankfurter, J.)). What is more, the view that we can assume a certain construction is correct because the Legislature has not

---

6. Further, the constitutional violation at issue in *Atz* examined vastly different facts than this case. For example, the police were "admitted by the defendant" into the property and did not have a search warrant. *Atz*, 94 So. at 330.

- 13 -

amended a statute is based on the "patently false premise that the correctness of statutory construction is to be measured by what the current [Legislature] desires, rather than by what the law as enacted meant." *Johnson v. Transp.* Agency, 480 U.S. 616, 671 (1987) (Scalia, J., dissenting). So, we reject this argument.

## C

Having determined that a remedy of exclusion is not required nor authorized by section 933.09, we conclude that our decision in *Cable* was wrongly decided. And in retrospect, it is clear how we committed that error.

Our primary mistake in *Cable* was failing to assess whether *Benefield* was correct as a matter of statutory interpretation. Instead, we presumed that the remedy of exclusion was justified based on "state law grounds" and concluded that *Hudson* did not prohibit a state from providing exclusion as a remedy for knock-and-announce violations. *Cable*, 51 So. 3d at 442.

The problem with employing that presumption is that *Benefield*'s decision to exclude the "fruits of the search" was not grounded in an analysis of the statute, and it is unclear whether we grounded the remedy in state law or instead in federal

constitutional law. *Benefield* involved a warrantless search that we concluded was "unreasonable under any standard that would be approved by a free country." 160 So. 2d at 709. And although we noted that one of the officers' many transgressions included a disregard of the responsibility to knock and announce, we ultimately held that "the fruits of the search being the product of an unlawful arrest and a search incident thereto, should have been excluded by the trial court upon proper motion." *Id.* at 711. Further, while we noted the common law underpinnings of the knock-and-announce statute, we did not suggest that an exclusionary rule was similarly a feature of common law. *Id.* at 710.

As a result, we erred in *Cable* when we overread *Benefield* and applied it in a case involving a search pursuant to a warrant where the sole issue was one of remedy for a statutory violation. We then misunderstood our role as a court, first by discounting section 933.17's chosen remedy, and then compounding that error by concluding that we could therefore supply one. That error put us in tension with precedent like *Jenkins*, where we have acknowledged that the inclusion or omission of remedies for statutory violations is

- 15 -

a legislative prerogative.[7]

A conclusion that a predecessor Court has erred, however, does not end our analysis. "[O]nce we have chosen to reassess a precedent and have come to the conclusion that it is clearly erroneous, the proper question becomes whether there is a valid reason *why not* to recede from that precedent." *State v. Poole*, 297 So. 3d 487, 507 (Fla. 2020). "The critical consideration ordinarily will be reliance." *Id.* But here, no reliance interest compels adherence to *Cable* because no one " 'altered his behavior in expectation of the' remedy holding from which we recede." *State v. Manago*, 375 So. 3d 190, 203 (Fla. 2023) (citing *Poole*, 297 So. 3d at 507).

---

7. The dissent's position that we should adhere to *Cable* because it offers a judicial remedy conflicts with precedent and our constitutional role. *See, e.g., Jenkins*, 978 So. 2d at 130 ("remedies for violation of this statute fall within the purview of the Legislature"); *see also* art. II, § 3, Fla. Const. ("No person belonging to one branch shall exercise any powers appertaining to either of the other branches . . . ."). Similarly, the dissent's penalty/remedy distinction in this context is a red herring. We are not authorized to supply a remedy to a statute, even if chapter 933's enforcement provision is characterized as a penalty, because that policy choice remains with the Legislature. *See Dade County. v. Nat'l Bulk Carriers, Inc.*, 450 So. 2d 213, 216 (Fla. 1984) ("The courts cannot amend or complete acts of the legislature intending to supply relief in instances where the legislature has not provided such relief.").

## III

Having receded from our decision in *Cable*, we answer the certified question in the negative, quash the decision of the First District, and remand this case to the First District for further proceedings consistent with this opinion.

It is so ordered.

MUÑIZ, C.J., and COURIEL, GROSSHANS, FRANCIS, and TANENBAUM, JJ., concur.
LABARGA, J., dissents with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LABARGA, J., dissenting.

The certified question before this Court asks whether the exclusionary rule should be applied to remedy a violation of Florida's statutory knock-and-announce requirement. *State v. Times*, 383 So. 3d 555, 560 (Fla. 1st DCA 2024). This Court answered the question in the affirmative sixteen years ago in *State v. Cable*, 51 So. 3d 434, 435-37 (Fla. 2010). Because there has been no change in the law regarding Florida's knock-and-announce requirements since *Cable* was decided, I dissent from the majority's decisions to recede from *Cable*, to quash the First District's decision

- 17 -

in *State v. Times*, and to answer the certified question in the negative.

**I**

Since this Court decided *Benefield v. State*, 160 So. 2d 706, (Fla. 1964), in 1964, "the district courts of appeal have applied the exclusionary rule to violations of the knock-and-announce statutes." *Cable*, 51 So. 3d at 439 (citing *Guerrie v. State*, 691 So. 2d 1132, 1133 (Fla. 4th DCA 1997); *Kistner v. State*, 379 So. 2d 128, 128 (Fla. 1st DCA 1979); and *Moreno v. State*, 277 So. 2d 81, 83 (Fla. 3d DCA 1973)). This Court in *Cable* approved of this longstanding practice. *Id.* at 441-42 (holding the exclusionary rule should apply to statutory knock-and-announce violations even though the recent United States Supreme Court decision in *Hudson v. Michigan*, 547 U.S. 586 (2006), made "clear that the exclusionary rule does not apply to Fourth Amendment knock-and-announce violations"). Therefore, I disagree with the majority's conclusion that this Court erred in *Cable* by "overread[ing] *Benefield* and appl[ying] it in a case involving a search pursuant to a warrant where the sole issue was one of remedy for a statutory violation." Majority op. at 15. *Cable* did not rely on *Benefield*. Instead, *Cable*

merely declined to recede from *Benefield* in light of *Hudson*, because *Benefield*, like this case, was decided on statutory, not constitutional grounds. 51 So. 3d at 435.

Because this case concerns solely a violation of Florida's knock-and-announce statute, rather than a constitutional violation, the majority's discussion of the conformity clause is misplaced. *See* majority op. at 5-6. While it is true that article I, section 12 of the Florida Constitution is to be construed in conformity to the Fourth Amendment of the U.S. Constitution, courts are under no such conformity requirement when construing Florida statutes and common law, which may provide additional protections. *See Cable*, 51 So. 3d at 443 (concluding that article I, section 12 is inapplicable because "*Hudson* is not automatically dispositive of the question of whether the exclusionary rule may be applied for violations of Florida's knock-and-announce statute because it involved a Fourth Amendment knock-and-announce violation—not one based on a state statute").

I would approve this Court's decision in *Cable*.

## II

The certified question in *Cable* expressly acknowledged that

- 19 -

the exclusionary rule is a "judicial remedy"—not a statutory one. *Id.* at 435. This is in line with United States Supreme Court precedent on the issue. *Davis v. United States*, 564 U.S. 229, 248 (2011) (explaining that "the exclusionary rule is not a personal constitutional right. It is a judicially created sanction, specifically designed as a windfall remedy to deter future Fourth Amendment violations.") (internal quotations and citations omitted). Since *Benefield*, the Florida judiciary has used the exclusionary rule as a windfall remedy for violations of Florida's knock-and-announce statutes. But despite the Supreme Court's definition of the exclusionary rule as a "judicially created sanction," *id.*, and this Court's reaffirmance that "the judicial remedy of exclusion of evidence [should] be applied for violations of Florida's statutory knock-and-announce provisions," *Cable*, 51 So. 3d at 435, 437, the majority now concludes that this Court erred in *Cable* by inferring the remedy of exclusion for statutory knock-and-announce violations when it was not explicitly authorized by the Legislature. Majority op. at 8-14. I disagree.

Cable did not "supply" a remedy for knock-and-announce violations, as the majority claims. *Id.* at 15. Rather, *Cable* merely

- 20 -

approved of the "judicial remedy of exclusion of evidence" which Florida courts had been applying to remedy statutory knock-and-announce violations since *Benefield*. 51 So. 3d at 435, 437-39. In reaching its decision, this Court in *Cable* discussed the important interests protected by the knock-and-announce requirement. These include "the protection of human life and limb," "the protection of property," and the protection of "those elements of privacy and dignity that can be destroyed by a sudden entrance." *Cable*, 51 So. 3d at 440 (quoting *Hudson*, 547 U.S. at 594); *see Times*, 383 So. 3d at 559 (listing the policies underlying the knock-and-announce requirements as: "(1) decreasing the risk of violence when executing a warrant, (2) protecting the privacy of the occupants of the home, and (3) preventing physical destruction of property" (citation omitted)). In my view, each of these interests weigh in favor of this Court's conclusion in *Cable*—that Florida courts should apply the exclusionary rule to remedy statutory knock-and-announce violations. I dissent from the majority's decision to recede from *Cable* and remove the remedy of exclusion for statutory knock-and-announce violations as it undermines the significant public interests which Florida's statutory knock-and-announce provisions

- 21 -

are meant to protect.

## III

I also disagree with the majority's conclusion that the Legislature provided a remedy for statutory knock-and-announce violations in section 933.17. Under the majority's view, section 933.17 is the Legislature's "chosen remedy" and is therefore the only remedy available for statutory knock-and-announce violations. Majority op. at 15. However, a remedy is "[t]he means of enforcing a right or preventing or redressing a wrong." *Remedy*, *Black's Law Dictionary* (12th ed. 2024). A "penalty," on the other hand, is "[p]unishment imposed on a wrongdoer, usu. in the form of imprisonment or fine." *Penalty*, *Black's Law Dictionary*. Because section 933.17 merely threatens to impose punishment on a wrongdoing officer, without purporting to "enforce" any "right" or "prevent" or "redress" any "wrong," the statute is a penalty, not a remedy. In addition to lacking any remedial effect whatsoever, the title of section 933.17 labels it a "penalty."

> *Exceeding authority in executing search warrant; penalty.* Any officer who in executing a search warrant willfully exceeds his or her authority or exercises it with unnecessary severity, shall be guilty of a misdemeanor of

- 22 -

the second degree, punishable as provided in s. 775.082 or s. 775.083.

§ 933.17, Fla. Stat.

While section 933.17 purports to threaten officers with a punishment of up to sixty days in jail and up to a $500 fine, this does not cover all statutory knock-and-announce violations, as Florida has two knock-and-announce statutes. Section 933.09 governs the execution of search warrants, while section 901.19 governs arrests. Because section 933.17 only applies when "executing a search warrant," violations of section 901.19 are beyond its reach. Further, there are many ways officers could violate section 933.09 without "willfully" exceeding their authority or acting with "unnecessary severity." Such statutory knock-and-announce violations are also beyond the scope of section 933.17 and therefore could not be prosecuted—even if the State so desired.

It is also worth noting that the State does not claim to enforce its statutory knock-and-announce provisions using section 933.17. In fact, the State provides no examples of an officer *ever* being prosecuted for their knock-and-announce violation under section 933.17. *See* Pet'r's Initial Br.; *see also* Pet'r's Reply Br. The fact

that no officer has been charged for a statutory knock-and-announce violation under section 933.17 since its enactment over one hundred years ago illustrates that the exclusionary rule is the only available deterrent for statutory knock-and-announce violations. Indeed, the absolute absence of criminal prosecutions against law enforcement officers for violating the knock-and-announce statute since the enactment of section 933.17, of which there must have been hundreds if not thousands, serves as a significant indicator of the provision's functional nullity.

Finally, in the highly unlikely event that an officer was prosecuted for their statutory knock-and-announce violation under section 933.17, any evidence the officer obtained through their commission of the statutory violation could still be used in the prosecution. Thus, applying section 933.17 in the knock-and-announce context would merely be a "penalty" for the violating officer, not a "remedy" for the Floridian whose home was entered in violation of the knock-and-announce statute. While the statute threatens the violating officer with criminal punishment, it does not "redress" or "prevent" statutory knock-and-announce violations, so it cannot be labeled a "remedy" for such violations. *Penalty*,

*Remedy*, *Black's Law Dictionary*.  Taken together, these facts illustrate that section 933.17 is a penal statute which the State does not use to enforce its knock-and-announce statutes. Accordingly, I disagree with the majority's conclusion that "section 933.17 prescribes remedies for violations of section 933.09." Majority op. at 10.

## CONCLUSION

For decades, Florida courts have applied the exclusionary rule as a judicial remedy for statutory knock-and-announce violations to protect the privacy and dignity of any occupants of the home being entered, to prevent violence, and to protect property.  In *Cable*, this Court expressly approved of this longstanding practice.  By receding from *Cable*, the majority fails to adequately protect these essential public interests.  I would approve *Cable* on the basis of stare decisis, answer the certified question in the affirmative, and affirm the First District's decision in *State v. Times*.

Because the majority's decision fails to do so, I dissent.

Application for Review of the Decision of the District Court of Appeal Certified Great Public Importance

First District - Case No. 1D2022-0887

(Leon County)

James Uthmeier, Attorney General, Jeffrey Paul DeSousa, Acting Solicitor General, and Adam B. Wilson, Assistant Attorney General, Tallahassee, Florida,

for Petitioner

Kevin Alvarez of the Law Office of Kevin Alvarez P.A., Tallahassee, Florida,

for Respondent