PER CURIAM.
This case is before the Court for review of the decision of the Second District Court of Appeal in Cable v. State, 18 So.3d 37 (Fla. 2d DCA 2009), regarding a violation of Florida’s knock-and-announce statute. In its decision the district court ruled upon the following question, which the court certified to be of great public importance:
IN VIEW OF THE ABROGATION OF THE EXCLUSIONARY RULE FOR FOURTH AMENDMENT KNOCK-AND-ANNOUNCE VIOLATIONS, SHOULD THE JUDICIAL REMEDY OF EXCLUSION OF EVIDENCE BE APPLIED FOR VIOLATIONS OF FLORIDA’S STATUTORY KNOCK-AND-ANNOUNCE PROVISIONS.
Id. at 39-40. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const.
This certified question asks whether the recent United States Supreme Court decision in Hudson v. Michigan, 547 U.S. 586, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006), requires the Court to recede from its 1964 opinion in Benefield v. State, 160 So.2d 706 (Fla.1964), in which this Court held that a violation of Florida’s knock-and-announce statute vitiated the ensuing arrest and required the suppression of the evidence obtained in connection with the arrest. We conclude that because the remedy of exclusion in Benefield was based on a violation of Florida’s knock-and-announce statute, and not the Fourth Amendment, Hudson does not mandate that we recede from Benefield. Accordingly, we approve the decision of the Second District.

FACTS

On May 15, 2007, at 6:37 a.m., Polk County Sheriffs Office Deputy Richard Lawrence was checking vehicle license tags in the parking lot of the Lake Wales Inn. Deputy Lawrence was in uniform and was in a marked Sheriffs Office vehicle. Deputy Lawrence recognized a vehicle that he had seen at a drug house the day prior and ran the license tag number. He found that it was registered to respondent Kathy Jo Cable. Upon running a check on Cable, Deputy Lawrence discovered that Cable had an outstanding Polk County arrest warrant for failure to appear on a charge of possession of methamphetamine. Deputy Lawrence contacted the motel manager and learned that Cable and her husband were staying at the motel.
After returning to his vehicle, Deputy Lawrence observed R.E., later identified as Cable’s sixteen-year-old son, exit the motel room. Deputy Lawrence initiated contact with R.E. and directed R.E. to go back to the motel room and “get his mother up” because Deputy Lawrence needed to speak with her. Deputy Lawrence did not inform R.E. about the outstanding warrant because he believed this information might prompt Cable to attempt a “back door” escape. After Deputy Lawrence waited approximately fifteen minutes, neither Cable nor R.E. came outside, so Deputy Lawrence knocked on the door of Cable’s motel room. Since there was no answer, Deputy Lawrence knocked again and announced “Sheriffs Office” and “come to the door.” Deputy Lawrence did not announce his purpose for being there — that he had a warrant for Cable’s arrest.
Deputy Lawrence received no answer after announcing his authority and re *436 questing that the occupants come to the door. After waiting a few minutes with still no response, Deputy Lawrence opened the unlocked door and entered the motel room. Inside, he found Cable, who was unresponsive on the bed, her husband, R.E., and two other boys. Deputy Lawrence woke Cable, notified her that he had a warrant for her arrest, and placed her in custody. A search of Cable’s person incident to the arrest revealed methamphetamine and drug paraphernalia.
Cable was charged by information with trafficking in methamphetamine and possession of drug paraphernalia. She filed a motion to suppress the evidence against her on the ground that the warrant for her arrest was illegally executed in violation of section 901.19, Florida Statutes (2005)— Florida’s statute requiring police to announce their authority and purpose before entering a building to arrest an individual. Specifically, she argued that Deputy Lawrence knocked and announced his presence and authority, but failed to announce his purpose before entering the motel room in which she was staying — a fact conceded by the State in this case. The trial court denied the motion after an evidentiary hearing. The trial court concluded in pertinent part:
Defendant contends that the Deputy Sheriff failed to announce his purpose for being there when knocking on the door, and therefore, the entry and arrest were unlawful. The Court disagrees.
Pursuant to V.P.S. v. State, 816 So.2d 801 (Fla. 4th DCA 2002), arrest warrants carry with them the limited authority to enter a dwelling when there is reason to believe that the person is within. Florida also recognizes a “substantial compliance” standard for arrest statutes. Conti v. State, 540 So.2d 934 (Fla. 1st DCA 1989). In accordance with these standards, and in light of all of the attendant facts and circumstances, the Court holds that there was, at a minimum, substantial compliance on the part of the officer and lawful authority to enter the room to arrest the Defendant.
Furthermore, in Hudson v. Michigan [547 U.S. 586], 126 S.Ct. 2159 [165 L.Ed.2d 56] (2006), a case in which it was undisputed that the knock and announce statute was violated, the United States Supreme Court held that, “exclusion [of the evidence] may not be premised on the mere fact that a constitutional violation was a ‘but-for’ cause of obtaining evidence.”
Id. at 2164.
Subsequently, Cable entered into a negotiated nolo contendere plea to the trafficking charge in exchange for a mandatory minimum sentence of three years in prison, reserving the right to appeal the denial of her motion to suppress. The State nolle prossed the paraphernalia charge. Cable was then sentenced pursuant to the plea agreement, and she appealed to the Second District.
The Second District reversed, concluding that the trial court erred in denying Cable’s motion to suppress. Cable, 18 So.3d at 38-39. The district court reasoned that “by failing to announce his purpose before entering the motel room, the officer acted in violation of section 901.19(1).” Id. at 38. In reaching this conclusion, the Second District relied on Benefield but noted that the facts in Bene-field regarding statutory violations by police were extreme. The district court then explained that it had considered less extreme circumstances in Urquhart v. State, 211 So.2d 79 (Fla. 2d DCA 1968):
Relying on Benefield, we held that an officer failed to comply with the provisions of the statute when he “did not announce his purpose and he did not wait until he was refused admittance *437 before pushing open the door.” Urquhart, 211 So.2d at 83. We also held that the officer’s failure to announce his purpose made “the subsequent arrest and incidental search invalid and any evidence seized as a result thereof ... inadmissible.” Id.
Cable, 18 So.3d at 38-39. The Second District found the facts in Cable to be indistinguishable from those in Urquhart. Id. at 39. The Second District also recognized that the “issue in the instant case, however, is not — as it was in Hudson— whether the evidence is subject to suppression under the Fourth Amendment. Instead, the issue is whether suppression of the evidence is a remedy that must be applied for the violation of the statutory knock-and-announce provision.” Id. The Second District recognized, however, that the reasoning of Hudson “calls into question the appropriateness of applying the exclusionary rule for violations of Florida’s knock-and-announce statute.” Id. Thus, it certified the question of great public importance as to whether the remedy of exclusion of evidence is required as a result of a violation of the knock-and-announce statute.
More recently, the Third District Court of Appeal relied on Hudson to conclude that the exclusionary rule does not apply to statutory knock-and-announce violations. See State v. Brown, 36 So.3d 770, 775 (Fla. 3d DCA 2010). In Brown, the defendant argued that section 901.19(1), the knock-and-announce statute, supported the trial court’s suppression of inculpatory evidence against him. Id. at 771, 773. The Third District rejected the defendant’s knock-and-announce argument, but noted:
[W]e believe that reversal is required even if we are wrong on the knock and announce point. This is so because of the holding of Hudson that even established violations of the principle do not implicate the exclusionary rule so as to suppress pertinent evidence. We follow Hudson both because we are persuaded by its reasoning on the point and because we are required to do so by Article 1, section 12, of the Florida Constitution.
Id. at 775 (footnotes omitted). The Third District noted that Cable was contrary to its reasoning. Id.

ANALYSIS

To answer the certified question, we first discuss Florida’s knock-and-announce statute and the case law interpreting it. We then discuss the Supreme Court’s decision in Hudson and why it does not control. We next discuss whether we should recede from Benefield and conclude that we should not. Thus, we answer the certified question in the affirmative. Finally, we discuss the application of Benefield to the facts of this case.

Florida’s Knock-and-Announce Statute and the Exclusionary Rule

Section 901.19(1), Florida Statutes (2005),[1] provides:
If a peace officer fails to gain admittance after she or he has announced her or his authority and purpose in order to make an arrest either by a warrant or when authorized to make an arrest for a felony without a warrant, the officer may use all necessary and reasonable force to enter any building or property where the person to be arrested is or is reasonably believed to be.[2]
*438 A separate statute, section 933.09, Fla. Stat. (2005), parallels this language for search warrants:
The officer may break open any outer door, inner door or window of a house, or any part of a house or anything therein, to execute the warrant, if after due notice of the officer’s authority and purpose he or she is refused admittance to said house or access to anything therein.
In Benefield, this Court held that noncompliance with the statutory knoek-and-announce requirement vitiated the ensuing arrest and required suppression of the evidence obtained as a result of the arrest— absent any of the recognized exigencies justifying noncompliance. 160 So.2d at 710. There, the Court noted that “the officers totally ignored every requirement of the law.” Id. at 709. “They barged into petitioner’s home without knocking or giving any notice whatever of their presence; they did not have a search warrant or warrant to arrest anyone; they ransacked petitioner’s home without the least semblance of any showing of authority.” Id. The Court explained:
It is true that the act is ambiguous and poorly drawn, but a reasonable interpretation of it runs like this: When an officer is authorized to make an arrest in any building, he should first approach the entrance to the building. He should then knock on the door and announce his name and authority, sheriff, deputy sheriff, policeman or other legal authority and what his purpose is in being there. If he is admitted and has a warrant, he may proceed to serve it. He is not authorized to be there to make an arrest unless he has a warrant or is authorized to arrest for a felony without a warrant. If he is refused admission and is armed with a warrant or has authority to arrest for a felony without a warrant, he may then break open a door or window to gain admission to the building and make the arrest. If the building happens to be one’s home, these requirements should be strictly observed.
Id. The Court then concluded:
As we interpret the common law authorities in relation to § 901.19(1), Florida Statutes, F.S.A., we conclude that even if probable cause exists for the arrest of a person, our statute is violated by an unannounced intrusion in the form of a breaking and entering any building, including a private home, except (1) where the person within already knows of the officer’s authority and purpose; (2) where the officers are justified in the belief that the persons within are in imminent peril of bodily harm; (3) if the officer’s peril would have been increased had he demanded entrance and stated the purpose, or (4) where those within made aware of the presence of someone outside are then engaged in activities which justify the officers in the belief that an escape or destruction of evidence is being attempted....
... Under the peculiar facts of this case, we are convinced that § 901.19(1), Florida Statutes, F.S.A., was violated and that its violation is not excused by any of the exceptions discussed herein and for this reason the fruits of the search being the product of an unlawful arrest and a search incident thereto, should have been excluded by the trial court upon proper motion.
*439 Id. at 710-11. In reaching this conclusion, the Court noted that “[s]ection 901.19, Florida Statutes, ... appears to represent a codification of the English common law which recognized the fundamental sanctity of one’s home yet nevertheless provides that an arresting office ‘may break open doors, if the party refused upon demand to open them.’” Id. at 710 (citing 1 Hale’s Pleas of the Crown 583 (1763)). As the Court explained:
Entering one’s home without legal authority and neglect to give the occupants notice have been condemned by the law and the common custom of this country and England from time immemorial. It was condemned by the yearbooks of Edward IV, before the discovery of this country by Columbus....
This sentiment has moulded our concept of the home as one’s castle as well as the law to protect it. The law forbids the law enforcement officers of the state or the United States to enter before knocking at the door, giving his name and the purpose of his call. There is nothing more terrifying to the occupants than to be suddenly confronted in the privacy of their home by a police officer decorated with guns and the insignia of his office. This is why the law protects its entrance so rigidly.
Id. at 709.
Since Benefield, the district courts of appeal have applied the exclusionary rule to violations of the knock-and-announce statutes. See Guerrie v. State, 691 So.2d 1132, 1133 (Fla. 4th DCA 1997) (“Here, because the officers failed to announce their purpose as required by [section 901.19(1) ], the evidence must be suppressed.”); Kistner v. State, 379 So.2d 128, 128 (Fla. 1st DCA 1979) (reversing trial court’s denial of a motion to suppress where sheriff failed to comply with knock- and-announce statute — section 933.09 (citing Benefield)); Moreno v. State, 277 So.2d 81, 83 (Fla. 3d DCA 1973) (concluding that trial court erred in failing to suppress the evidence seized as a result of an arrest effectuated in violation of section 901.19(1) (citing Benefield)). However, all of these decisions predated Hudson, which changed the analysis regarding exclusion of evidence for violation of constitutional knock-and-announce requirements.

The United States Supreme Court’s Decision in Hudson v. Michigan

In Hudson v. Michigan, the United States Supreme Court considered whether a violation of the Fourth Amendment knock-and-announce rule requires the exclusion of all evidence found in the search. 547 U.S. at 588, 126 S.Ct. 2159. In Hudson, “[w]hen the police arrived to execute the warrant, they announced their presence, but waited only a short time — perhaps ‘three to five seconds,’ ... — before turning the knob of the unlocked front door and entering Hudson’s home.” Id. The defendant moved to suppress all of the inculpatory evidence against him, arguing that the police officers’ premature entry violated his Fourth Amendment rights. Id. After unsuccessfully attempting to obtain relief in the state courts, Hudson petitioned the Supreme Court for a writ of certiorari. Id. at 588-89, 126 S.Ct. 2159. The Supreme Court granted certiorari and denied relief, concluding that the exclusionary rule is not an appropriate remedy for a violation of the Fourth Amendment knock-and-announce requirement.
In reaching this conclusion in Hudson, the Supreme Court noted that the knock- and-announce requirement is a well-established principle with deep roots in our English common law heritage. Id. at 589, 126 S.Ct. 2159. The Supreme Court also explained that it concluded in Wilson v. Arkansas, 514 U.S. 927, 115 S.Ct. 1914, *440 131 L.Ed.2d 976 (1995), that the knock- and-announce rule is also a command of the Fourth Amendment — in essence, the common law knock-and-announce rule is part of the reasonableness inquiry under the Fourth Amendment. Hudson, 547 U.S. at 589, 126 S.Ct. 2159; see also Wilson, 514 U.S. at 930, 115 S.Ct. 1914. The Supreme Court highlighted the distinction between the question of whether evidence should be excluded in a particular case and the question of whether law enforcement violated the Fourth Amendment knock- and-announce requirement:
“In Whiteley [v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971) ], the Court treated identification of a Fourth Amendment violation as synonymous with application of the exclusionary rule to evidence secured incident to that violation. Subsequent case law has rejected this reflexive application of the exclusionary rule.” (Citation omitted.) We had said as much in [United States v. [, Leon [, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) ], a decade earlier, when we explained that “[wjhether the exclusionary sanction is appropriately imposed in a particular case ... is ‘an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct.’ ”
In other words, exclusion may not be premised on the mere fact that a constitutional violation was a “but-for” cause of obtaining evidence. Our cases show that but-for causality is only a necessary, not a sufficient, condition for suppression. In this case, of course, the constitutional violation of an illegal manner of entry was not a but-for cause of obtaining the evidence. Whether that preliminary misstep had occurred or not, the police would have executed the warrant they had obtained, and would have discovered the gun and drugs inside the house. But even if the illegal entry here could be characterized as a but-for cause of discovering what was inside, we have “never held that evidence is ‘fruit of the poisonous tree’ simply because ‘it would not have come to light but for the illegal actions of the police.’ ” Segura v. United States, 468 U.S. 796, 815, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984).
Hudson, 547 U.S. at 591-92, 126 S.Ct. 2159. The Supreme Court also explained the interests protected by the knock-and-announce requirement:
One of those interests is the protection of human life and limb, because an unannounced entry may provoke violence in supposed self-defense by the surprised resident. Another interest is the protection of property. Breaking a house (as the old cases typically put it) absent an announcement would penalize someone who did not know of the process, of which, if he had notice, it is to be presumed that he would obey it. The knock-and-anñounce rule gives individuals the opportunity to comply with the law and to avoid the destruction of property occasioned by a forcible entry. And thirdly, the knock-and-announce rule protects those elements of privacy and dignity that can be destroyed by a sudden entrance. It gives residents the opportunity to prepare themselves for the entry of the police. The brief interlude between announcement and entry with a warrant may be the opportunity that an individual has to pull on clothes or get out of bed. In other words, it assures the opportunity to collect oneself before answering the door.
What the knock-and-announce rule has never protected, however, is one’s interest in preventing the government from seeing or taking evidence de *441 scribed in a warrant. Since the interests that were violated in this case have nothing to do with the seizure of the evidence, the exclusionary rule is inapplicable.
Id. at 594, 126 S.Ct. 2159 (citations and internal quotation marks omitted). However, the United States Supreme Court did not address whether states were free to enact their own knock-and-announce statutes that mandate exclusion of evidence as a remedy for violation of the statute or enact other remedies for violations, such as monetary damages.

Why Hudson Does Not Control

We conclude that Hudson does not control the question of whether the exclusionary rule applies to statutory knock-and-announce violations in Florida because we deem the distinction between common law remedies and constitutional remedies stressed in Cable a meaningful one. As explained by the Second District in Cable:
The issue in the instant case, however, is not — as it was in Hudson — whether the evidence is subject to suppression under the Fourth Amendment. Instead, the issue is whether suppression of the evidence is a remedy that must be applied for the violation of the statutory knock-and-announce provision. The Florida case law recognizes the common law and constitutional background for the knock-and-announce statute. See Benefield, 160 So.2d at 710 (stating that section 901.19 “appears to represent a codification of the English common law which recognized the fundamental sanctity of one’s home”); State v. Loeffler, 410 So.2d 589, 593 (Fla. 2d DCA 1982) (stating that the purpose of the knock- and-announce statute “parallels that of the constitutional guarantees against search and seizure”). But the case law does not support the conclusion that the statute has no force independent of the requirements of the Fourth Amendment. Under the Florida case law, it is by no means clear that the exclusionary rule has been applied to violations of the knock-and-announce statute only because Fourth Amendment knock-and-announce violations were subject to the exclusionary rule. Indeed, Benefield applied the exclusionary rule for violations of the knock-and-announce statute long before the United States Supreme Court decided in Wilson v. Arkansas, 514 U.S. 927, 115 S.Ct. 1914, 131 L.Ed.2d 976 (1995), that the common law knock-and-announce rule was also a “ ‘command of the Fourth Amendment.’” Id. at 931, 115 S.Ct. 1914 (quoting New Jersey v. T.L.O., 469 U.S. 325, 337, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985)).
Cable, 18 So.3d at 39.
Under Hudson, it is clear that the exclusionary rule does not apply to Fourth Amendment knock-and-announce violations. However, Hudson is not automatically dispositive of the question of whether the exclusionary rule may be applied for violations of Florida’s knock-and-announce statute because, as explained in State v. Slaney, 653 So.2d 422, 425 (Fla. 3d DCA 1995):
[T]he states are privileged under their state law to adopt higher, but not lower, standards for police conduct than those required by the Fourth Amendment. Cooper v. California, 386 U.S. 58, 62, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967) (state constitutional provision on search and seizure); Sibron v. New York, 392 U.S. 40, 61, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (state statute). In Florida, these higher standards may not, as a matter of state law, be imposed under the state constitutional guarantee against unreasonable searches and seizures, Art. I, § 12, Fla. Const. (1982 amendments); *442 Bernie v. State, 524 So.2d 988 (Fla.1988), but may be imposed by other provisions of Florida law, including a state statute.
(Emphasis added.) As a matter of state law, a state may provide a remedy for violations of state knock-and-announce statutes, and nothing in Hudson prohibits it from doing so. Benefield was based on state law grounds and not the Fourth Amendment.

Whether We Should Recede from Benefield

In urging us to recede from Benefield, the State relies on three grounds: (1) the Supreme Court’s opinion in Hudson; (2) the adoption of an amendment to our state constitution requiring this Court to interpret our constitutional amendment against unreasonable search and seizures in conformity with the United States Constitution; and (3) our opinion in Jenkins v. State, 978 So.2d 116 (Fla.2008), regarding our approach to remedying statutory violations committed by law enforcement officers. In North Florida Women’s Health & Counseling Services, Inc. v. State, 866 So.2d 612, 637 (Fla.2003), we explained when circumstances require that we recede from precedent:
Before overruling a prior decision of this Court, we traditionally have asked several questions, including the following. (1) Has the prior decision proved unworkable due to reliance on an impractical legal “fiction”? (2) Can the rule of law announced in the decision be reversed without serious injustice to those who have relied on it and without serious disruption in the stability of the law? And (3) have the factual premises underlying the decision changed so drastically as to leave the decision’s central holding utterly without legal justification?
See also Valdes v. State, 3 So.3d 1067, 1077 (Fla.2009) (same). We conclude that none of the developments relied on by the State are sufficient to overcome the presumption in favor of adhering to our precedent.
Hudson
The State contends first that Hudson requires us to recede from Benefield. We disagree because we find Benefield distinguishable. In Benefield, we determined that a violation of the state’s knock-and-announce statute, not a constitutional violation, mandated the remedy of exclusion. We conclude that because Hudson does not address the remedy for state-created statutory violations, Hudson does not require us to recede from Benefield.
Constitutional Amendment
The State also argues that a 1982 amendment to the Florida Constitution requires us to recede from Benefield after Hudson. Article I, section 12, of the Florida Constitution, which was amended in 1982 and effective January 3, 1983, provides in pertinent part: “The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures, ... shall not be violated.... This right shall be construed in conformity with the 4th Amendment to the United States Constitution, as interpreted by the United States Supreme Court.” This Court held in Bernie v. State, 524 So.2d 988, 990-91 (Fla.1988), that following the 1982 amendment to the Florida Constitution,
we are bound to follow the interpretations of the United States Supreme Court with relation to the fourth amendment, and provide no greater protection than those interpretations. Indeed, an exclusionary rule that was once constitutionally mandated in Florida can now be eliminated by judicial decision of the United States Supreme Court.
*443 However, we conclude that this amendment is inapplicable to the instant case because, as explained above, Hudson is not automatically dispositive of the question of whether the exclusionary rule may be applied for violations of Florida’s knock-and-announce statute because it involved a Fourth Amendment knock-and-announce violation — not one based on a state statute.
Jenkins v. State
The State finally argues that our precedent in Jenkins v. State changed the way we analyze the remedy of exclusion of evidence for statutory violations. We disagree. In Jenkins, this Court considered, among other things, whether the exclusionary rule was a remedy for a violation of Florida’s strip search statute. 978 So.2d at 129. The Court noted that “the plain language of [the statute] does not expressly provide for exclusion of evidence as a remedy for a violation of the statute.” Id. at 130. However, the Court also noted that the statute made explicit reference to civil and injunctive remedies, and “[s]ince the Legislature chose to reference these remedies in the statute, we must assume that the Legislature intended to exclude all other remedies. Therefore, it would be inappropriate for this Court to read a judicially created remedy into the statute.” Id. at 130 n. 14.
In reaching this conclusion, this Court noted that it has held that the exclusionary rule applies to certain statutes that are silent as to a remedy for their violation. Id. (citing State v. Johnson, 814 So.2d 390 (Fla.2002) (exclusionary rule applies to willful violation of statute governing confidentiality of patient medical records); Benefield, 160 So.2d 706). The Court then noted, without deciding, that Hudson may impact this Court’s decision in Benefield. See id.
We conclude that Jenkins is distinguishable from this case. The strip-search statute at issue in Jenkins explicitly provided civil and injunctive remedies — thus indicating that the Legislature intended to omit an exclusionary remedy, as reasoned by the Court in Jenkins. The knock-and-announce statutes in Florida do not explicitly provide for any remedies. The State argues that a person harmed by a violation of the knock-and-announce statute may seek civil damages for a violation. However, without a basis in the statute for civil remedies, and because of the difficulties faced by a defendant seeking to recover money damages for a statutory violation against the police, we are concerned that the important values represented by the knock-and-announce statute, which is based on common law origins, would be undermined if the exclusionary rule did not apply to its violation.
The fact that Benefield has been the law since 1964 and the fact that the statute has not been amended by the Legislature to prohibit the remedy of exclusion are further considerations in favor of not receding from Benefield. As we have observed, “[l]ong-term legislative inaction after a court construes a statute amounts to legislative acceptance or approval of that judicial construction.” Goldenberg v. Sawczak, 791 So.2d 1078, 1081 (Fla.2001).

This Case

In this case, although the Deputy Lawrence acted pursuant to a valid arrest warrant, he never announced his purpose before entering the motel room. This is not simply a technical omission. A citizen’s obligation to respond to a request to allow a law enforcement officer into his or her home depends on the purpose of the law enforcement officer’s request. While a citizen has every right to refuse entry to an officer who may be merely seeking *444 information or conducting an investigation, the citizen has no right to refuse entry by an officer whose purpose in seeking entry is to execute an arrest warrant or search warrant. Before law enforcement officials may properly enter a private building to effect an arrest and “use all necessary and reasonable force to enter any building or property,” § 901.19(1), Fla. Stat., they are required to announce their purpose. Accordingly, because in this case the State concedes that the deputy never announced his purpose, the Second District properly applied our precedent to suppress the evidence seized as a result of the unlawful entry.

CONCLUSION

For the foregoing reasons, we answer the certified question of great public importance in the affirmative and approve the Second District’s decision in Cable. We disapprove of the Third District’s alternative holding in Brown, which relied on Hudson and the 1982 constitutional amendment to conclude that the exclusionary remedy no longer existed for statutory knock-and-announce violations. We remand to the Second District for proceedings consistent with this opinion.
It is so ordered.
PARIENTE, LEWIS, QUINCE, and PERRY, JJ., concur.
POLSTON, J., dissents with an opinion, in which LABARGA, J., concurs.
CANADY, C.J., recused.

. The 2010 version of section 901.19 remains the same as the 2005 version.

. At the time of the Benefield decision, the language of section 901.19(1) provided:
An officer, in order to make an arrest either by virtue of a warrant, or when authorized to make such arrest for a felony without a warrant, may break open a door or window *438 of any building in which the person to be arrested is or is reasonably believed to be, if he is refused admittance after he has announced his authority and purpose.
160 So.2d at 708.