# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

———————————————

No. 1D2022-0887

———————————————

STATE OF FLORIDA,

    Appellant,

    v.

KEITH ALEXANDER TIMES,

    Appellee.

———————————————

On appeal from the Circuit Court for Leon County.
Francis Allman, Judge.

April 10, 2024

BILBREY, J.

The State of Florida challenges an order granting suppression of evidence seized following the forced entry into a home to execute a search warrant. We affirm.

Appellee Keith Times was charged with trafficking in amphetamines, possession of cocaine, and possession of a firearm by a convicted felon. These charges followed a search of his home pursuant to a warrant. Law enforcement executed the search warrant after forcibly entering his home with a battering ram. Prior to the entry, police officers knocked multiple times and twice announced that police were present. They demanded that someone was to come to the door. However, it was not until

seconds before entry that an officer stated that the police were in possession of a search warrant.

Times moved to suppress the fruits of the search arguing the officers violated section 933.09, Florida Statutes (2020), the "knock-and-announce" statute.[1] After a hearing at which the senior police officer of the unit executing the warrant testified, the trial court concluded that the officers did not comply with section 933.09. As it has long been the law in Florida that a violation of a

_____

[1] Section 933.09 is one of two "knock-and-announce" statutes in Florida. Section 933.09 pertains to searches and provides that an

> officer may break open any outer door, inner door or window of a house, or any part of a house or anything therein, to execute the [search] warrant, if after due notice of the officer's authority and purpose he or she is refused admittance to said house or access to anything therein.

There is a similar provision regarding arrest warrants, section 901.19, which provides in subsection (1) that

> [i]f a peace officer fails to gain admittance after she or he has announced her or his authority and purpose in order to make an arrest either by a warrant or when authorized to make an arrest for a felony without a warrant, the officer may use all necessary and reasonable force to enter any building or property where the person to be arrested is or is reasonably believed to be.

Because both sections 933.09 and 901.19 "impose the same salutary requirement of knock and announce, and both are grounded in the same policy considerations," case law about one of these statutes is considered as persuasive authority for the other. *Van Allen v. State*, 454 So. 2d 49, 50 (Fla. 4th DCA 1984); *see also Albritton v. State,* 634 So. 2d 1114, 1117 (Fla. 1st DCA 1994) (recognizing that the two knock-and-announce statutes are "substantially similar" and looking at holdings regarding one statute in interpreting another).

knock-and-announce statute mandates exclusion of evidence seized because of the wrongful law enforcement conduct, the trial court suppressed the evidence. *See Benefield v. State*, 160 So. 2d 706, 710 (Fla. 1964) (applying the exclusionary rule to preclude the use of evidence seized when the knock-and-announce statute was violated while making an arrest).

The trial court concluded the knock-and-announce statute was violated following multiple views of a video made from a body camera of one of the participating officers. The trial court explained

> Here, the [police body camera] video would bear out that the officers first knocked on the door and said nothing. Nobody's required to answer their door just because somebody knocks on it. Then they, two different times, seconds apart, announce, police officers, or police department, come to the door. Again, there's no requirement that you answer the door just because the police officers are at the door. . . .
>
> And so then it's not just, the police are here, open the door, it's, the police are here and we have a warrant from a judge who has considered the evidence and has authorized those officers to then open the door by force, if necessary. But until that happens, until there's that announcement, people are not required to open their doors just because somebody knocks on it, even if it's the police. And so from the time that happens, that announcement of lawful authority, until the breach of the door, is five to six seconds.

The State claims that seven seconds elapsed between the declaration of a search warrant and the use of a battering ram. And the State adds, as the police had previously identified themselves in the seconds before the disclosure of their possession of a search warrant, Times and his family were on some sort of

3

notice.[2] We choose not to parse the video in the manner suggested by the State.

"A trial court's ruling on a motion to suppress comes to the appellate court clothed with a presumption of correctness and the court must interpret the evidence and reasonable inferences and deductions derived therefrom in a manner most favorable to sustaining the trial court's ruling." *Rodriguez v. State*, 187 So. 3d 841, 845 (Fla. 2015) (quoting *Terry v. State*, 668 So. 2d 954, 958 (Fla. 1996)). A trial court's decision on the issue of due notice in a knock-and-announce case is a decision of fact that is binding on this court if it is supported by competent, substantial evidence. *Kellom v. State*, 849 So. 2d 391, 394 (Fla. 1st DCA 2003) (citing *State v. Robinson*, 565 So. 2d 730, 732 (Fla. 2d DCA 1990)).

In his final announcement before entry, an officer stated: "police department, search warrant, step away from the door to avoid injury." Whether the phrase "police department" landed on the sixth or seventh second of time before the entry, or whether the phrase "search warrant" landed on the sixth or seventh second of time before the entry, the trial court's conclusion that neither Times nor other occupants had time to respond to the door is supportable by the evidence. At the point that an officer stated law enforcement had a search warrant, the officer also instructed the residents to step away from the door. That is, by the time the officer stated his authority to enter, the decision had already been made to breach the door and not to wait for a response. "Where officers knock, announce their authority and purpose, and then enter with such haste that the occupant does not have a reasonable opportunity to respond, the search violates section 933.09." *Kellom*, 849 So. 2d at 394 (citing *Holloway v. State*, 718 So. 2d 1281, 1282 (Fla. 2d DCA 1998)); *see also Benefield*, 160 So. 2d at 709 (requiring that the knock-and-announce statute "be strictly observed" when law enforcement attempts entry into a home).

---

[2] It is of no consequence in the case before us that Times' residence had a video doorbell because the State offered no evidence at the suppression hearing that the doorbell camera was functional or that the residents had an opportunity to view that video.

While the State implies that the words "search warrant" should not be imbued with any thaumaturgic quality, the controlling statute mandates that police officers announce the authority by which they seek entry. Indeed, section 933.09 plainly states that first, "due notice of the officer's authority and purpose" has to be given. Second, there must be a refusal of admittance, which courts have held may be implied by an occupant's delay in responding. *See Falcon v. State*, 230 So. 3d 168, 170 (Fla. 2d DCA 2017). Barring any exigencies, it is only after these two steps have occurred that law enforcement may enter.

This is not a new law, as the statute was enacted a century ago, and the principle which this statute codifies was acknowledged in the English common law of the seventeenth century. *See Wilson v. State*, 673 So. 2d 505, 508–09 (Fla. 1st DCA 1996). It is no little thing for the government to enter the home of a citizen by force and without consent. *See Benefield*, 160 So. 2d at 709 (explaining the knock-and-announce law is interpreted "rigidly" because "of the moral emphasis placed on liberty and the sanctity of the home in a free country").[3] Since *Benefield*, Florida courts have applied the exclusionary rule to knock-and-announce violations "to protect three underlying policies: (1) decreasing the risk of violence when executing a warrant, (2) protecting the privacy of the occupants of the home, and (3) preventing physical destruction of property." *State v. Cassells*, 835 So. 2d 397, 400 (Fla. 2d DCA 2003) (citations omitted).

The State argues that given *Hudson v. Michigan*, 547 U.S. 586 (2006), the exclusionary rule is no longer an appropriate remedy for violating Florida's knock-and-announce statutes. This is a pure question of law that we review de novo. *See Bryant v. State*, 265 So. 3d 726, 728 (Fla. 1st DCA 2019) (citing *State v. Markus*, 211 So. 3d 894, 902 (Fla. 2017)).

---

[3] The Florida Supreme Court in *Benefield* noted that there are exceptions to the knock-and-announce rule such as an "imminent peril of bodily harm" to the officers or where "destruction of evidence is being attempted." 160 So. 2d at 710. Those exceptions are inapplicable here.

5

The Florida Supreme Court has rejected the argument that the United States Supreme Court in *Hudson* overruled *Benefield*'s holding that the exclusionary rule applies to violations of the knock-and-announce statute. *State v. Cable*, 51 So. 3d 434, 435 (Fla. 2010). In *Cable*, the Court noted that the holding in *Hudson* was based on a Fourth Amendment violation. 51 So. 3d at 441. But in *Cable*, as here, the issue was a violation of the Florida knock-and-announce statute. The Court in *Cable* recognized that a Florida statute can provide greater protection than the minimum required by the constitutional guarantee against unreasonable searches and seizures. *Id.* at 441–42 (quoting *State v. Slaney*, 653 So. 2d 422, 425 (Fla. 3d DCA 1995)).

As for the State's invitation to apply an inevitable discovery type of exception to violations of the knock-and-announce statutes, this court has already rejected this exception. *See Kellom*, 849 So. 2d at 394. There, we stated, "We conclude that the inevitable discovery doctrine is not applicable in cases in which section 933.09 is violated, as the application of the doctrine to evidence seized in violation of the knock and announce rule would render section 933.09 and the policy behind the rule meaningless." *Kellom*, 849 So. 2d at 396; *see also State v. Robinson*, 565 So. 2d 730, 733 (Fla. 2d DCA 1990) (noting that if inevitable discovery applied whenever the knock-and-announce statute was violated, its application would undo the statutory requirement).

The State points to language in *Rodriguez*, 187 So. 3d at 849, where the Florida Supreme Court said it would apply the inevitable discovery doctrine if officers illegally entered a home but were in the process of obtaining a warrant when entry was made.[4] But *Rodriguez*, like *Hudson*, was a Fourth Amendment case. The State has not supplied us with a case in which inevitable discovery was applied to preclude the exclusionary rule where the officers

---

[4] In *Rodriquez*, the Court held inevitable discovery did not apply since the law enforcement officers were not actively pursuing a search warrant. *Id.* at 849–50. Otherwise, "application of the inevitable discovery rule would effectively nullify the requirement of a search warrant under the Fourth Amendment." *Id.* at 850.

violated a statute providing greater protection against searches or seizures than the minimum required by the Fourth Amendment. Since *Cable* holds that suppression applies to violation of the statutory requirement of an officer to knock and announce, we are compelled to comply.

In sum, because there is competent and substantial evidence to support the trial court's finding that the police officers violated section 933.09, and because the State offers no meritorious reason for not applying the exclusionary rule here, we AFFIRM. Nonetheless, as the State points out in its initial brief, the holding in *Cable* requiring suppression for a knock-and-announce violation appears be the minority position among the various states that have considered the issue in the eighteen years since the United States Supreme Court decision in *Hudson*. *See, e.g.*, *Lane v. State*, 513 S.W.3d 230, 235–36 (Ark. 2017) (denying suppression where a knock-and-announce violation occurred); *State v. Bembry*, 90 N.E.3d 891, 900–01 (Ohio 2017) (same). We therefore certify the following question to the Florida Supreme Court as one of great public importance:

> WHETHER EVIDENCE OBTAINED UNDER A VALID SEARCH WARRANT MUST BE SUPPRESSED TO REMEDY A VIOLATION OF THE KNOCK-AND-ANNOUNCE REQUIREMENT OF SECTION 933.09, FLORIDA STATUTES?

AFFIRMED; QUESTION CERTIFIED.

ROBERTS, J., concurs; NORDBY, J., specially concurs with opinion.

––––––––––––––––––––––––––––

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

––––––––––––––––––––––––––––

NORDBY, J., specially concurring.

I agree we must affirm. Officer testimony and police camera footage support the trial court's conclusion that law enforcement did not comply with Florida's "knock-and-announce" requirement under section 933.09, Florida Statutes. In the same breath that the police officer announced the search warrant, he directed the home's occupants to "step away from the door to avoid injury." There was simply no opportunity to discern whether the occupants "refused admittance" following such "due notice of the officer's authority and purpose." § 933.09, Fla. Stat. (2020).

The officer who provided the verbal commands at Times' door testified, in full candor, that he made a mistake in timing:

> I erred. I made a mistake. Typically we do say search warrant sooner, and after reviewing the video, I wish I had, not because we wouldn't be here, but because consistent with my training, we do typically, upon announcement, say, police, search warrant, come to the door. And watching the video, that was not said. Obviously, it's in the video. . . . After reviewing my training files and watching the video again, I do not think it was proper.

Current Florida Supreme Court precedent exacts a high price for this officer's unintentional error—it compels the exclusion of evidence seized under a valid search warrant. *See State v. Cable*, 51 So. 3d 434 (Fla. 2010) (declining to recede from *Benefield v. State*, 160 So 2d 706 (Fla. 1964), which applied the exclusionary rule to violations of a statutory knock-and-announce requirement). The State makes compelling arguments highlighting why that precedent should be revisited. *Cf. Cable*, 51 So. 3d at 444 (Polston, J., dissenting, joined by Labarga, J.) ("By adding an exclusionary rule to remedy a violation of Florida's knock-and-announce statutory requirement, the majority improperly applies a remedy that is not present in the statute and that is contrary to both the United States and Florida Constitutions."); *see also* § 933.17, Fla. Stat. (already providing a remedy for an officer who exceeds his or her authority while executing a search warrant). And so, I join in certifying a question of great public importance so that the Florida

Supreme Court may have an opportunity, if it chooses, to reexamine *Cable* and *Benefield* and consider anew whether the exclusion of evidence remains an appropriate remedy for unintentional violations of Florida's statutory knock-and-announce requirements.

I use the term "anew" because the Florida Supreme Court's refusal in *Cable* to recede from *Benefield* was grounded in reasoning based on the multi-factor *stare decisis* framework set out in *North Florida Women's Health & Counseling Services, Inc. v. State*, 866 So. 2d 612 (Fla. 2003). *See Cable*, 51 So. 3d at 441. The Court has since disapproved the "malleable" and inconsistent standard from *North Florida Women's Health* in favor of a "more straightforward" approach:

> More fundamentally, we are wary of any invocation of multi-factor *stare decisis* tests or frameworks like the one set out in *North Florida Women's Health*. They are malleable and do not lend themselves to objective, consistent, and predictable application. They can distract us from the merits of a legal question and encourage us to think more like a legislature than a court. And they can lead us to decide cases on the basis of guesses about the consequences of our decisions, which in turn can make those decisions less principled.

> We believe that the proper approach to stare decisis is much more straightforward. In a case where we are bound by a higher legal authority—whether it be a constitutional provision, a statute, or a decision of the Supreme Court—our job is to apply that law correctly to the case before us. When we are convinced that a precedent clearly conflicts with the law we are sworn to uphold, precedent normally must yield.

*State v. Poole*, 297 So. 3d 487, 507 (Fla. 2020), *as clarified on denial of reh'g* (Apr. 2, 2023). *Cable* is ripe for assessment under this standard.

The State weaves into its arguments an attempt to distinguish *Cable* and limit its holding to only knock-and-

9

announce violations involving arrest warrants. Yes, knock-and-announce requirements for arrest warrants are set out in a different statute than the search warrant statute here. But we cannot set aside *Cable* on such a technical distinction. In discussing the knock-and-announce requirement of section 901.19(1), Florida Statutes, the Court emphasized that section 933.09, Florida Statutes, "parallels this language for search warrants." *Cable*, 51 So. 3d at 438. And throughout its analysis, the Court referred to "statutory knock-and-announce violations" and "violations of the knock-and-announce statutes," even citing a series of district court decisions where the exclusionary rule had been applied to violations not only of section 901.19 but also section 933.09. *Id.* at 437-44. *Cable* thus treated the exclusionary rule as equally applicable to violations of either statute.

Noteworthy too is *State v. Bamber*, 630 So. 2d 1048 (Fla. 1994), which fell between *Benefield* and *Cable*. The Court in *Bamber* addressed a no-knock search conducted under a search warrant in violation of section 933.09 and refused to expand the exclusionary rule exceptions recognized under *Benefield* to include a blanket exception "any time a small quantity of drugs is believed to be present in a residence with standard plumbing." 630 So. 2d at 1053. The Court thus recognized exclusion as the remedy for violating the statute here. Given this, I cannot ignore or evade *Cable*'s adherence to the remedy of exclusion for knock-and-announce statutory violations.

Alternatively, the State argues that the evidence is admissible under the inevitable discovery doctrine. It urges this court to recede from our decision in *Kellom v. State*, which rejected the inevitable discovery doctrine as an exclusionary exception for a knock-and-announce violation. 849 So. 2d 391, 396 (Fla. 1st DCA 2003). But this case is a poor vehicle to revisit *Kellom*, as the record does not reveal any basis for application of the inevitable discovery doctrine to the search that occurred here.

In brief, the inevitable discovery doctrine allows evidence to come in despite police misconduct if an ongoing independent investigation would have unveiled that evidence regardless of the misconduct. *Nix v. Williams*, 467 U.S. 431, 448 (1984) (finding that evidence was admissible even when an officer improperly elicited

information from the defendant because a large-scale search team was underway and would have discovered the victim's body even without the illegal elicitation). As the Florida Supreme Court has recently cautioned, "[o]ur jurisprudence has been clear thus far that the inevitable discovery doctrine does not apply when the prosecution cannot demonstrate an active and independent investigation." *Rodriguez v. State*, 187 So. 3d 841, 848 (Fla. 2015) (citations omitted).

The State makes no showing that an active and independent investigation was underway. The State only vaguely suggests that if the police had followed the proper procedure, they would have obtained the evidence legally. Such does not warrant an application of the inevitable discovery doctrine.

Given the current state of Florida Supreme Court directives in this area, I agree that we must affirm.

_____

Ashley Moody, Attorney General, and Adam B. Wilson, Assistant Attorney General, Tallahassee, for Appellant.

Kevin Alvarez of Law Office of Kevin Alvarez P.A., Tallahassee, for Appellee.